***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Dollar, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of these cases, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. The defendant was self insured, with National Workers' Compensation Fund of North Carolina.
3. On August 2, 1999, an Order of Liquidation was issued, declaring the Fund insolvent and naming the Department of Insurance as Liquidator. Pursuant to N.C. Gen. Stat. § 97-131, et seq., the North Carolina Self-Insurance Guaranty Association (hereinafter, Guaranty Association) assumed responsibility for covered claims incurred during each member-employer's period of self-insurance. MKS Construction, Inc., was one such member-employer of the Fund.
4. The employee-employer relationship existed between the parties at all relevant times.
5. The plaintiff's average weekly wage was $399.00, which yields a compensation rate of $266.01 per week, based upon the Form 22.
6. Plaintiff's claim is for injuries to his head, neck, shoulders, surrounding tissues, and lower back, arising out of accidents in the course and scope of his employment, which said claims the Fund and the Guaranty Association have denied as compensable.
7. The issues for determination are:
 a. Did plaintiff sustain injuries by accident to his head, neck, and shoulder by accidents in the course and scope of his employment under the provisions of the Act?
 b. Did plaintiff sustain an injury as a result of a specific traumatic incident of the work assigned?
 c. Is plaintiff's current medical condition causally related to his employment with the employer?
 d. If plaintiff's conditions are causally related to the employment, to what benefits may he be entitled under the provisions of the Act?
 e. Are there other physical and/or psychological causes of plaintiff's alleged medical conditions?
8. The parties stipulated the following documentary evidence:
 a. I.C. Forms 18 for the three claims, 19 for file 874008, two Forms 33, 61, and two Forms 33R; and,
b. Medical Records (454 pages).
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 37 years old. He was educated through the eighth grade and is dyslexic. Plaintiff has a history of asthma and alcohol abuse. He received help for his alcohol abuse through AA and has been sober for approximately six years. Plaintiff has suffered from chronic neck pain since approximately 1982, when he was involved in a serious motor vehicle accident.
2. Plaintiff began working for the defendant-employer on July 1, 1998, as a carpenter. His duties included framing houses and installing Tyvek. Plaintiff earned $10.00 per hour for forty hours per week, subject to time out of work for inclement weather.
3. On July 20, 1998, plaintiff was moving an eight-foot ladder and was unaware that a six-pound nail gun had been left on top of the ladder. The nail gun fell, striking plaintiff in the right side of his head. Plaintiff saw stars, and also had scratches and some bleeding on his head as a result of the injury. He reported the injury to Bobby Wallace, plaintiff's supervisor.
4. Later on the same day, plaintiff was working in an area where they were bracing the eaves. As plaintiff turned to round the corner, he hit his head on the bracing. He reported such incident to Mr. Wallace.
5. On July 21, 1998, plaintiff cleaned up the worksite while Mr. Stewart made a punch list to finish the job. Mr. Wallace asked plaintiff to redo a header, which weighed approximately fifty pounds. As plaintiff was attempting to put a block in place, he lost control of the header and almost fell to the ground from the ladder. As a result of the awkward twisting, he felt immediate pain in his low back. Plaintiff lay down during the lunch break, and shortly thereafter, his supervisor sent him home for the day. Mr. Wallace thought plaintiff was having problems due to his asthma.
6. On July 22, 1998, Dr. Daniel Maggio of Ogden Family Chiropractic rendered treatment for plaintiff's low back injury and muscle spasms. Plaintiff received a light-duty note from Dr. Maggio and took it to Mr. Wallace. This was the first notice Mr. Wallace received about plaintiff's back injury.
7. The defendant-employer did not offer light-duty work to the plaintiff on July 22, 1998. Instead, Mr. Wallace told plaintiff to stay out of work until Monday. On July 27, 1998, plaintiff returned to work for the employer at a site in downtown Wilmington, where he was assigned to place straps. Plaintiff experienced back spasms and shooting pains down his legs while working. Plaintiff worked a short time on July 28, but left to seek medical attention for his back and leg symptoms. He did not work for the defendant-employer after this date.
8. On July 28, 1998, plaintiff went to the emergency room at New Hanover Regional Medical Center for treatment of his low back pain, which radiated down the right mid-calf. He was diagnosed with acute lumbar strain and was referred to follow-up with orthopedist Dr. Rodger. Plaintiff was also excused from work for the remainder of the week, as the defendants did not offer any light-duty work consistent with the work note from the examining doctor. On August 13, 1998, plaintiff returned to the emergency room with complaints of pain radiating to his right heel and numbness in both knees. He was sent to Coastal Orthopaedics, but left the office before he could be examined due to questioning about the method of payment for treatment. On August 19, 1998, plaintiff returned to Coastal Orthopaedics for low back pain, radiating pain into the posterior aspect of the right leg, and urinary incontinence. Dr. R. Mark Rodger examined plaintiff on August 24, 1998, and ordered a CT-myelogram. Diagnostic testing revealed an acentric disc bulge/hernia on the left at L5-S1.
9. In Fall 1998, plaintiff's experienced some relief of his back symptoms, through chiropractic manipulation. On or about October 15, 1998, plaintiff re-injured his back while trying to remove a stump. Plaintiff put his weight on a pry bar to maneuver the stump, and tied a rope to pieces of the stump to pull them with his truck. The greater weight of the competent medical evidence in the record supports a finding that plaintiff only temporarily aggravated the work injury by the stump removal episode. Dr. Rodger recommended that plaintiff continue to receive chiropractic treatment, due to his history of substance abuse. Plaintiff received chiropractic adjustments by Dr. Maggio through December 18, 1998.
10. On or about August 14, 1998, plaintiff filed a Form 18, Notice of Accident to Employer, on which he alleged to have sustained an injury on July 20, 1998, when a nail gun fell from above and struck him in the head, injuring his head, neck, shoulders, and surrounding tissues. This incident was denominated as I.C. File 874008.
11. On or about August 14, 1998, plaintiff filed a Form 18, Notice of Accident to Employer, on which he alleged to have sustained an injury on July 20, 1998, when he struck his head on a scaffolding brace, injuring his head, neck, shoulders, and surrounding tissues. This incident was denominated as I.C. File 855219.
12. On or about August 14, 1998, plaintiff filed a Form 18, Notice of Accident to Employer, on which he alleged to have sustained an injury on July 20, 1998, when he twisted his back while installing a header for a door frame, injuring his lower back, vertebrae, discs, and surrounding muscles, tissues, ligaments, and tendons. This incident was denominated as I.C. File 855220.
13. The defendant-employer prepared an I.C. Form 19 on August 18, 1998, regarding the incident with the nail gun, which is denominated as I.C. File 855219.
14. At some point in 1998 or early 1999, the defendant-employer closed its business due to unspecified financial problems.
15. On April 29, 1999, Dr. George Huffmon of Trent Neurosurgery saw plaintiff for a second opinion. He later referred plaintiff to Dr. Craig VanDerVeer of Carolina Neurosurgery Spine Associates in Charlotte. On July 12, 1999, Dr. VanDerVeer performed a microscopic discectomy at L5-S1, which initially relieved plaintiff's leg numbness and S1 nerve distribution symptoms. However, by October 13, 1999, plaintiff was complaining of right hip, buttock, calf and foot pain. In the Summer of 2001, Dr. VanDerVeer performed a fusion surgery, and as of the date of the hearing before the Deputy Commissioner, plaintiff was not yet released from treatment. However, during his deposition, Dr. VanDerVeer testified that he expected plaintiff to be able to return to full, unrestricted activities within nine to twelve months after the July 17, 2001, fusion surgery or by July 17, 2002. Plaintiff thus was medically able to return to work on July 17, 2002.
16. On December 16, 1999, the defendant filed a Form 61, Denial of Workers' Compensation Claim on the three files.
17. On January 16, 2001, Dr. Rodger responded to a letter from counsel for the Guaranty Association. In his reply, Dr. Rodger noted that plaintiff's present condition was that of mechanical back pain, which appeared to be a result of a workplace injury that occurred on July 22, 1998. Dr. Rodger opined that in his experience, plaintiff's pain would likely require treatment at a pain clinic, and he noted that he had referred plaintiff to Dr. Henry Lepore. Dr. Rodger found plaintiff now retained a permanent partial disability impairment rating of fifteen percent to the spine and not two percent, as he had originally rated. This increase was because the earlier rating was assigned prior to plaintiff's back surgery. Dr. Rodger opined in his deposition that plaintiff is unable to return to work as a carpenter due to the permanent restrictions imposed as a result of the work-related injury.
18. Dr. Patrick Martin is senior attending psychiatrist at The Oaks psychiatric inpatient program at New Hanover Regional Medical Center. Plaintiff was admitted to The Oaks on April 17, 2000, due to suicidal ideations. Plaintiff has a history of psychiatric and inpatient commitments for a variety of substance abuse and depression episodes.
19. In April of 2000, Delmer Russ of U.S. Security hired plaintiff to work at Brick Landing Plantation and Winding River. Plaintiff worked twenty-eight to fifty-six hours per week, and earned approximately $6.25 to $6.50 per hour. He worked until December 2000. This employment did not demonstrate earning capability since plaintiff had to undergo a subsequent surgery on July 17, 2001, because of his compensable injuries.
20. The defendants failed to file an I.C. Form 19 in either I.C. Files 855219 or 855220.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The plaintiff sustained injuries by accident arising out of and in the course of the employment on July 20 and 21, 1998. N.C. Gen. Stat. § 97-2(6).
2. As a result of the compensable injury on July 21, 1998, the plaintiff is entitled to temporary total disability compensation at the rate of $266.01 per week for the period from July 22, 1998, through July 26, 1998, and from July 28, 1998 to July 17, 2002, when he was medically able to return to work. N.C. Gen. Stat. § 97-29. Defendants are entitled to an offset for wages earned during the period of April 2000 through December 2000.
3. The plaintiff is entitled to have the defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure, or lessen the period of disability. N.C. Gen. Stat. § 97-2(19). At such time as Dr. VanDerVeer releases plaintiff, plaintiff may benefit from vocational rehabilitation services to assist him to return to gainful employment suitable to his work restrictions.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendant shall pay temporary total disability compensation to the plaintiff at the rate of $266.01 per week for the period from July 22, 1998, through July 26, 1998, and from July 28, 1998, to the present and continuing until further Order of the Commission. As much of said compensation as has accrued shall be paid in a lump sum.
2. Defendant shall pay medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
3. As the plaintiff has not reached maximum medical improvement, this Opinion does not address this issue. However, in the event that the parties should be unable to agree on the amount of permanent partial disability compensation which may be due plaintiff, either party may request a hearing from the Commission to resolve this matter.
4. Defendant shall pay the costs.
This 2nd day of January, 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER